## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN WILLIAMS MILLER and JOHN
FRAZER MILLER,
     Plaintiffs,

            v.

CHRISTOPHER BYERS, et al.,
     Defendants.

Civil Action No.
1:18-cv-04322-SDG

## **ORDER**

Before the Court are at least 29 motions, most of them filed by Plaintiff John

Williams Miller.[1] The exact reason for this inexact count is addressed in short

order. Suffice it to say, the primary pending motions (because, collectively, they

dispose of nearly all issues in this litigation) are:

- a motion to dismiss by Defendants City of Johns Creek, Georgia; Brian Weaver; John Clifton; and Christopher Byers (collectively, the "Johns Creek Defendants") [ECF 37];

- a motion to dismiss by Defendant Judge Robert C.I. McBurney [ECF 45];

- a motion for judgment on the pleadings by Lisa Walnut (who is not a defendant) and Defendants Forsyth County, Georgia; Michael Hobbs; and Caroline Yi (collectively, the "Forsyth County Defendants") [ECF 49];

---

[1]    ECF 37, 44, 45, 49, 54, 56, 59, 65, 69, 73, 75, 77, 78, 82, 83, 84, 87, 92, 93, 96, 99, 104, 105, 110, 117, 118, 119, 120, and 121.

- a motion for Rule 11 sanctions by Walnut and Defendant Hobbs [ECF 75]; and

- a motion by Plaintiffs to amend the complaint to add additional defendants [ECF 119, 120].

For the reasons stated below, the Johns Creek Defendants' motion to dismiss is **GRANTED**; Judge McBurney's motion to dismiss is **GRANTED**; the Forsyth County Defendants' motion for judgment on the pleadings is **GRANTED**. Walnut and Hobbs's sanctions motion is **DENIED**; and Plaintiffs' motion to add additional defendants is **DENIED**. These rulings moot many of the remaining pending motions, which are also addressed below.

# CONTENTS

I.  BACKGROUND .................................................................................. 6

    a.  Procedural History ..................................................................... 6

    b.  State of the Docket ..................................................................... 8

    c.  Substantive Allegations .......................................................... 10

        i.  The Original Complaint ..................................................... 10

        ii.  The Amended Complaint............................................... 13

II.  APPLICABLE LEGAL STANDARDS .............................................. 16

    a.  Jurisdiction .............................................................................. 16

    b.  Service ...................................................................................... 17

    c.  Treatment of Allegations Not Contained in Pleadings...................... 19

    d.  Williams Miller's Asserted Role as "Miller Family
        Representative"........................................................................ 21

    e.  Motions to Dismiss ................................................................. 23

    f.  Motion for Judgment on the Pleadings................................. 24

    g.  *Pro Se* Parties ......................................................................... 25

III.  JOHNS CREEK DEFENDANTS' MOTION TO DISMISS............................ 26

    a.  The Briefing ............................................................................. 26

        i.  The First Opposition ......................................................... 28

        ii.  The Second Opposition .................................................... 29

        iii.  Williams Miller's Subsequent Responses ................................. 31

    b.  Discussion................................................................................ 32

| | | | |
|---|---|---|---|
| | *i.* | Section 1983 | 32 |
| | | 1. Failure to File Police Report | 33 |
| | | 2. Failure to Provide Police Protection to the Miller Family | 34 |
| | | 3. Framing of Plaintiffs, Fabrication of Evidence, and False Charges | 35 |
| | | 4. Terroristic Threats | 38 |
| | *ii.* | Qualified Immunity | 39 |
| IV. | JUDGE MCBURNEY'S MOTION TO DISMISS | | 42 |
| | a. | The Briefing | 43 |
| | | *i.* Williams Miller's Responses | 44 |
| | b. | Discussion | 47 |
| | | *i.* Judge McBurney Is Entitled to Absolute Judicial Immunity Against Suit for Damages | 47 |
| | | *ii.* Section 1983 Is Inapplicable to Official Capacity Claims | 50 |
| V. | JUDGE MCBURNEY'S MOTION FOR PROTECTIVE ORDER | | 51 |
| VI. | FORSYTH COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS | | 52 |
| | a. | The Briefing | 53 |
| | b. | Discussion | 55 |
| | | *i.* Lisa Walnut Was Never Made a Party to this Action. | 55 |
| | c. | Plaintiffs Failed to Properly Effect Service on Forsyth County. | 56 |

d.   Plaintiffs Have Not Stated a Claim Against Defendant
Michael Hobbs. ...................................................................... 57

e.   Defendant Caroline Yi Is Entitled to Absolute
Immunity. ............................................................................... 59

VII.   MISCELLANOUS MOTIONS BY WILLIAMS MILLER............................... 60

a.   Motion to Dismiss Defendants' Motions to Dismiss........................... 61

b.   Motions to Appoint Counsel ................................................ 62

c.   Motions for Sanctions .......................................................... 63

d.   Motions for Protection/for Restraining Orders/to Seize
Defendants.............................................................................. 65

e.   Motions Related to Warrant Requirement........................................... 67

f.   Motion to Compel.................................................................. 69

g.   Motion for Clarification........................................................... 69

h.   Motions Seeking Discovery and Jury Trial........................................... 70

i.   Motions to Admit Evidence .................................................... 71

j.   Motions for Settlement ......................................................... 73

k.   Motions for Leave to Amend................................................... 73

VIII.   WALNUT AND HOBBS'S MOTION FOR SANCTIONS ............................ 79

a.   Sanctions Motion ............................................................... 79

b.   The Sanctions Motion Did Not Threaten Plaintiffs. ............................ 83

IX.   CONCLUSION ................................................................... 84

## I.     BACKGROUND

### a.     Procedural History

Plaintiffs are a father (John Williams Miller) and son (John Frazer Miller). They initiated this action *pro se* on July 2, 2018 in the United States District Court for the District of Maryland, naming as Defendants Christopher Byers; Michael Hobbs; Caroline Yi; John Clifton; Brian Weaver; the City of Johns Creek, Georgia; and Forsyth County, Georgia.[2] Plaintiffs alleged they were citizens of Maryland.[3] The individual Defendants were alleged to be citizens of the State of Georgia.[4] The basis for the court's jurisdiction was asserted to be diversity of citizenship, with Plaintiffs seeking damages in excess of the required amount in controversy.[5] Plaintiffs also asserted 42 U.S.C. § 1983 as a basis for federal question jurisdiction.[6]

On August 20, 2018, the District of Maryland issued a show-cause order directing Plaintiffs to show why the case should not be transferred to this Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. 1406(a), since all Defendants reside in Georgia and the substantial part of the events giving rise to the Complaint

---

[2]     ECF 1

[3]     *Id.* at 1.

[4]     *Id.* at 2–4.

[5]     *Id.* at 5, 6; ECF 1-1, at 1.

[6]     ECF 1, at 5; ECF 1-1, at 1.

occurred in Georgia.[7] Williams Miller responded to that order by indicating that he did not object to the transfer of the case to this Court.[8] At the same time, Williams Miller also attempted to amend the Complaint to add Judge Robert C.I. McBurney as a Defendant.[9]

On September 13, 2018, the District of Maryland *sua sponte* transferred the case to this Court.[10] Defendants had not appeared in the action at that point. In fact, they had not even been served with the Complaint. Because of the transfer, the district court for the District of Maryland did not address Williams Miller's attempt to amend the Complaint in his response to the show-cause order.[11] It does

---

[7]   ECF 2, at 2.

[8]   ECF 3, at 1.

[9]   *Id.* at 3.

Although the Complaint does not so state, Judge McBurney sits on the Superior Court of Fulton County, Georgia. https://www.fultoncourt.org/judges/viewjudge.php?id=33. A district court may take judicial notice of public records published by governmental agencies. *Beckley v. City of Atlanta, Ga.*, No. 1:16-cv-1435-MHC, 2017 WL 6460300, at *4 (N.D. Ga. Oct. 18, 2017) (citing *Universal Express, Inc. v. S.E.C.*, 177 F. App'x. 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider.")); *Henderson v. Sun Pharm. Indus., Ltd.*, 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity.").

[10]   ECF 4.

[11]   *Id.* at 1 n.2.

not appear from the record that Defendants were served with the original Complaint either before or after the case was transferred to the Northern District of Georgia.

On June 12, 2019, the Court entered an order staying all discovery in this action pending its ruling on the Johns Creek Defendants' motion to dismiss.[12] On February 10, 2020, the Court expanded that stay until it also enters a ruling on the dispositive motions filed by the Forsyth County Defendants and Defendant McBurney.[13]

### b.   State of the Docket

For ease of discussion, this Order addresses Plaintiffs' various motions by subject matter. First, however, the Court takes a moment to address the extensive docket in this action. Williams Miller has filed numerous motions throughout the litigation, purportedly on behalf of himself and his son. Williams Miller's filings triggered responses, usually from each of the three sets of Defendants. Occasionally, nonparties also responded to Williams Miller's filings.[14] Defendants

---

[12]   ECF 52.

[13]   Feb. 10, 2020 Oral Order (staying discovery pending rulings on ECF 37, 45, 49).

[14]   *See, e.g.*, ECF 95 (Response of Steven Leibel, P.C. to "Motion: Forsyth Criminal Lawyer(s) Obstructing 'Federal Civil Rule 26 Allowed Without Discovery Enacted' Evidence Gathering and Refusing Demand Compensation").

also filed their own motions, to which Williams Miller responded— frequently. Compounding the problems generated by these scads of filings is the fact that nearly all of Williams Miller's submissions to the Court are styled as "motions," with each issue in the submission designated as its own separate "motion." As a result, one filing usually contains multiple motions—thus, the imprecise count of the number of pending motions.

The exact reason for Williams Miller's approach is unclear, but it seems that at some point, he became convinced the Court would not review his filings unless they were called motions. It is true that the federal rules require a *request for an order* from the Court to be designated as a motion. Fed. R. Civ. P. 7(b)(1). It is not true, however, that the Court ignores anything filed on the docket that is not itself called a "motion." In fact, the Court has reviewed every filing made in this case— no matter its designation.

Whatever the reason for Williams Miller's belief about the Court's process, the end result is that there are "motions" objecting to motions;[15] "motions" that do not request any order from the Court;[16] and "motions" that pose broad rhetorical

---

[15] *See, e.g.*, ECF 65, at 1 ("Motion to Dismiss all Dismissal Motions by Defendants").

[16] *See, e.g.*, ECF 77, at 1 ("Motion for the Collective Settlement with: City of Johns Creeks, Johns Creek Defendants and Judge McBurney.").

questions.[17] Then, there are responses and opposition filings to those "motions." On top of that, there are replies. The docket in this action is therefore extensive and nearly incomprehensible, despite the fact that the case is still at the motion to dismiss stage. Addressing the parties' voluminous, repetitive, and often unnecessary briefing has consumed a substantial amount of the Court's time and resources. It has also delayed the Court's ability to promptly rule on the actual substantive issues presented by this litigation. The conduct of all parties and their counsel contributed to creating a morass for the Court to wade through, despite what should have been a fairly straightforward analysis of a complaint and motions by defendants attacking the sufficiency of that pleading.

### c.   Substantive Allegations

#### i.   The Original Complaint

The original Complaint was signed only by Williams Miller (a fact pointed out by the transferring court).[18] Among other things, that pleading asserts Defendant Hobbs (1) committed felony assault on and attempted murder of Frazer Miller and (2) stole family property from Plaintiffs.[19] Plaintiffs further allege that

---

[17]   *See, e.g.*, ECF 73, at 1 ("Motion: Does the U.S. Constitution and 42 U.S.C[.] Sec 1983 Apply to the Millers?").

[18]   ECF 1, at 7; ECF 2, at 1 n.1.

[19]   ECF 1, at 6; ECF 1-1, at 1.

the Johns Creek and Forsyth County police have "terrorized me and my family and forcing [us] to leave like my Cherokee ancestors."[20] The Complaint goes on to state that Frazer Miller was harmed because of "lies and racial hatred" of people who have "physically and legally attacked him because of the way he looks."[21] Williams Miller alleges that he was forced to flee his home because "domestic terrorist[s] are driving [us] out."[22]

An exhibit to the Complaint further details these allegations. Defendants Clifton and Byers allegedly made terroristic threats to Williams Miller. Defendant Weaver alleged prevented Williams Miller from filing an attempted murder charge against Defendant Hobbs for the attempt against Frazer Miller's life. Williams Miller also claims that Defendant Hobbs trespassed on private property, forcibly entered a locked vehicle, and stole Williams Miller's father's house keys.[23] As damages, Williams Miller also demands amounts for land in Johns Creek, Georgia allegedly stolen from his family. The Complaint is unclear about whether

---

[20]   *Id.* at 6.

[21]   *Id.*

[22]   *Id.*

[23]   ECF 1-2, at 1–2.

the land was purportedly stolen through the forced relocation of the Cherokee or if it was supposedly stolen by Defendant Hobbs.[24]

As for Frazer Miller, the Complaint alleges that his First Amendment rights were denied by the Johns Creek Police Department (which is not a defendant) and Defendant Byers because they refused to accept a police report related to the alleged assault/attempted murder of Frazer Miller.[25] Plaintiffs also assert that Defendant Yi "illegally revoked" Frazer Miller's driving license.[26] They appear to contend that Frazer Miller was illegally arrested by Forsyth County Police and illegally prosecuted in Forsyth County, purportedly because of his Cherokee heritage.[27] Defendants Byers and the City of Johns Creek allegedly framed Frazer Miller.[28]

---

[24] *Compare* ECF 1-2, at 2 ("My great grandfather was force[d] to flee to freedom (Florida) which was NOT part of the United States) after the U.S. government ordered the force[d] relocation from Georgia (specifically, Johns Creek where I legally re-bought land that was stolen from my great grandfather) of the Cherokee Indians to Oklahoma.") *with id.* ("My fathers key, important family property (like my great grandfather's land) was stolen by" Defendant Hobbs).

[25] *Id.* at 3.

[26] *Id.* at 4.

[27] *Id.* at 5, 6.

[28] *Id.* at 6.

### ii.    The Amended Complaint

On October 2, 2018, Plaintiffs filed an amended pleading in this Court.[29] The Amended Complaint was signed by both Williams Miller and Frazer Miller.[30] Similar to the original Complaint, the Amended Complaint alleges that Defendant Hobbs assaulted and attempted to murder Frazer Miller and stole Miller family property.[31] Plaintiffs contend the alleged assault against Frazer Miller was because of his Cherokee heritage.[32] Williams Miller asserts that the Johns Creek Police Department and Forsyth County police have terrorized him and his family, caused the premature death of his mother, and forced him to "leave like my Cherokee ancestors."[33] He argues his mother's death was a direct result of the "Domestic Terrorism" of Defendants.[34] Plaintiffs seek $285.055 million in damages ($150 million for Williams Miller and $135,055,000 for Frazer Miller).[35]

---

[29]   ECF 7.

[30]   *Id.* at 5.

[31]   *Id.* at 4.

[32]   *Id.*

[33]   *Id.*

[34]   *Id.*

[35]   *Id.*

The Amended Complaint identifies eight issues in dispute. First, Plaintiffs allege that Defendant Byers and the Johns Creek Police Department violated Frazer Miller's First Amendment rights by refusing to accept a report about alleged assault/attempted murder of Frazer Miller by Defendant Hobbs.[36]

Second, Plaintiffs allege the illegal revocation of Frazer Miller's driving license by Defendant Yi.[37] Third, Plaintiffs allege that Frazer Miller was kidnapped by Forsyth County Police while he was on private property in another county. Defendant Yi allegedly lied and put Frazer Miller in jail even though he contends he committed no crime.[38] Fourth, Plaintiffs allege that Frazer Miller was illegally prosecuted in Forsyth County and that the City of Johns Creek and Defendant Byers changed county line signage in order to frame Frazer Miller.[39]

Fifth, Plaintiffs allege a violation of 42 U.S.C. § 1983, contending that Defendant Hobbs, who purportedly assaulted Frazer Miller, (1) caused Frazer Miller to fear for his life and (2) tried to kill Frazer Miller because of his Cherokee heritage.[40] Sixth, Plaintiffs allege that Defendants Clifton and Byers made

---

[36] ECF 7-1, at 1.

[37] *Id.* at 2.

[38] *Id.* at 3.

[39] *Id.* at 4.

[40] *Id.* at 5.

terroristic threats to Williams Miller and threatened to harm him if he ever returned to the Johns Creek Police Station to file a criminal police report.[41] This issue asserts that Defendant Weaver also prevented Williams Miller from filing charges related to the alleged assault/attempted murder of Frazer Miller. Plaintiffs also contend that the chief of the Johns Creek Police has directed the department to refuse all service to Williams Miller and his family.[42] Neither the chief nor the police department are, however, defendants in this action.

Seventh, Plaintiffs allege that Defendant Hobbs criminally trespassed on Williams Miller's private property, assaulted and attempted to murder Frazer Miller, and stole Williams Miller's deceased father's house keys.[43] The eighth and final issue asserted in the First Amended Complaint addresses alleged conduct by Judge McBurney. Although the nature of Plaintiffs' concerns is not entirely clear, they seem to contend that Judge McBurney violated their First and Fourth Amendment rights by refusing to require Defendant Hobbs to appear in court in connection with the alleged assault/attempted murder of Frazer Miller.[44]

---

[41]   *Id.* at 6.

[42]   *Id.*

[43]   *Id.* at 7.

[44]   *Id.* at 8.

## II.   APPLICABLE LEGAL STANDARDS

### a.   Jurisdiction

In their Amended Complaint, Plaintiffs assert both federal question and diversity of citizenship as the basis for the Court's jurisdiction.[45] In the form used for their pleading, they allege their citizenship for diversity purposes as: "The plaintiff, Miller, John Williams and Miller, John Frazer, is a citizen of the State of Maryland and Georgia respectively," with the underlined portion having been filled into the preprinted document.[46] It is not clear whether Plaintiffs are contending that they are citizens of both Maryland and Georgia or that Williams Miller is a citizen of Maryland and Frazer Miller is a citizen of Georgia. The former is legally impossible: Individuals "are only citizens of the state in which they are domiciled . . . . Every individual has but one domicile and is a citizen of only one state." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir. 2011). If Plaintiffs meant the latter, there is no diversity jurisdiction. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996) ("Diversity jurisdiction requires complete diversity—every plaintiff must be diverse from every defendant."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.

---

[45]   ECF 7, at 3.

[46]   *Id.*

2000). However, because Plaintiffs' claims are based on alleged violations of the federal constitution, the Court may exercise federal question jurisdiction over the § 1983 claim based on 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' remaining claims under 28 U.S.C. § 1367(a) since the state law claims arise from the same case and controversy as the § 1983 claim.

### b.    Service

As for service on Defendants, on April 4, 2019, the Court ordered Plaintiffs to show cause why they had not affected service or to show proper proof of service.[47] Williams Miller complied with that order to some extent, filing proofs of service as to some—but not all—Defendants. The Johns Creek Defendants were served with the Amended Complaint on April 23, 2019;[48] Defendant Yi was served on April 30;[49] Defendant Hobbs was served on May 7.[50] Plaintiffs also purported to serve nonparty Walnut.[51]

There is nothing in the record showing that Defendants Forsyth County or Judge McBurney were ever served with process. The county made only a special

---

[47]    ECF 24.

[48]    ECF 30–33.

[49]    ECF 34.

[50]    ECF 36.

[51]    ECF 35.

appearance and raised failure of process and service of process as defenses.[52] Even after this, Plaintiffs made no apparent efforts to serve the county or Judge McBurney, or to seek additional time to effect service.[53] Judge McBurney, however, did not raise service or process defenses in his motion to dismiss.[54]

A failure of service alone would be a sufficient basis to dismiss all claims against a defendant, especially where a plaintiff has never attempted to show good cause for the failure. Fed. R. Civ. P. 4(m); *see also* ECF 24, Apr. 4, 2019 Order at 2 ("Plaintiffs are **ORDERED** to either file proper proof of service or otherwise show good cause as to why they have failed to effectuate service on the named defendants.").[55] Such a dismissal would generally be without prejudice. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Accordingly, as discussed below, the claims against

---

[52]   ECF 38, at 3–4 (seventh and eighth affirmative defenses); *see also* ECF 49, at 1 n.2.

[53]   *See generally* Docket.

[54]   ECF 45.

[55]   *See also* ECF 29, at 1 (granting Plaintiffs an additional four weeks to file evidence of proper service on Defendants).

Forsyth County will be dismissed. Additionally, because Judge McBurney is entitled to judicial immunity, the claims against him must be dismissed with prejudice.

### c.   Treatment of Allegations Not Contained in Pleadings

Many of Plaintiffs' numerous filings with this Court contain new allegations against various government officials—including individuals and entities not named as defendants. For instance, on October 22, 2018, Williams Miller added two issues in dispute to the Amended Complaint. (Frazer Miller did not sign either one of these.) In the first, Williams Miller seeks the right to file a police report related to the criminal activity that took place on his property. He also requests that he be permitted to return to his home in Johns Creek, Georgia without threats and "terroristic tactics" from the Johns Creek and Forsyth County police. However, neither of these police departments is a defendant in this action.[56]

In the second additional issue, Williams Miller claims that Michael Garrison (of the Forsyth County Police Department) and Defendant Byers conspired to deprive Williams Miller of his First Amendment rights by refusing to let him report the alleged criminal conduct engaged in by Defendant Hobbs. Williams

---

[56]   ECF 15, at 2.

Miller also appears to contend that crimes were committed by non-parties Lisa Walnut and "Strano" on Williams Miller's property.[57]

The Court will consider these additional issues since they were filed before Defendants were served with the Amended Complaint and were designated as attempts to amend the operative pleading. However, Plaintiffs are not permitted multiple "free" amendments to their pleadings. *Anderson v. USAA Cas. Ins. Co.*, 218 F.R.D. 307, 309–10 (D.D.C. 2003) (party may amend pleading once as matter of course before responsive pleading is served) (citing Fed. R. Civ. P. 15(a)). Nor can Plaintiffs serially change their allegations in responsive briefings or without leave. Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . .").

For instance, in his June 4, 2019 filing, Williams Miller again accuses Walnut, Strano, and Defendant Hobbs of having attacked Frazer Miller, even though Walnut and Strano are not named in the original or Amended Complaint and Plaintiffs made no effort to add them as defendants until October 2019.[58] Williams

---

57   ECF 16, at 2.

58   ECF 47, at 2; ECF 119; ECF 120.

Miller has continued to raise new allegations against Defendants and others in his filings. Attempting to amend a pleading in this manner is improper and prejudicial to the actual and putative Defendants. "It is well-settled that a plaintiff may not amend [his] complaint by raising arguments for the first time in [his] response." *Allstate Ins. Co. v. ADT, LLC*, No. 1:15-cv-517-WSD, 2015 WL 5737371, at *7 (N.D. Ga. Sept. 30, 2015) (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium)). Accordingly, the Court disregards any allegations that were not part of Plaintiffs' actual pleadings [ECF 7, 15, 16] before service of the Amended Complaint.

### d.   Williams Miller's Asserted Role as "Miller Family Representative"

While the pleadings are framed as seeking relief for both Plaintiffs, Frazer Miller did not sign most of Plaintiffs' filings with this Court beyond the actual Amended Complaint.[59] It is clear from a review of those filings that Williams Miller drafted, signed, and filed them.

Williams Miller is not, however, an attorney admitted to practice in the State of Georgia or in this Court. While a person is free to represent himself in an action in federal court, he may not represent another individual unless he is a licensed

---

[59]   ECF 7, at 5.

attorney. Williams Miller cannot, therefore, represent his son (Frazer Miller) in this action. To do so would violate Georgia's unauthorized practice of law statutes and this Court's Local Rules. O.C.G.A. § 15-19-50 (defining "practice of law" as including "[r]epresenting litigants in court and preparing pleadings and other papers"); O.C.G.A. § 15-19-51(a)(1) ("It shall be unlawful for any person other than a duly licensed attorney at law . . . . To practice or appear as an attorney at law for any person other than himself in any court of this state or before any judicial body."); LR 83.1(A)(1), NDGa ("Any *attorney* who is an active member in good standing of the State Bar of Georgia is eligible for admission to the bar of this Court.") (emphasis added); *id.* (B)(1) ("A non-resident *attorney* who is not an active member in good standing of the State Bar of Georgia, but who is a member in good standing of the bar of any United States court or of the highest court of any State must apply in writing for permission to appear *pro hac vice* in any case in which the attorney will appear in Court on behalf of a party.") (emphasis added).

Accordingly, Williams Miller's "Motion Establishing Representation" [ECF 117], in which he seeks to represent Frazer Miller—as the "Official Miller Family Representative"—is **DENIED**. Williams Miller's request that all court communications be sent to him [ECF 117] is also **DENIED** to the extent he seeks to receive such communications in a representative capacity on behalf of Frazer

Miller. Further, because Frazer Miller has not signed or joined on any of the oppositions to the motions to dismiss, motion for judgment on the pleadings, or motion for sanctions, the Court treats those motions as unopposed by Frazer Miller. LR 7.1(B), NDGA ("Failure to file a response shall indicate that there is no opposition to the motion.").

### e.   Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. In order to survive a motion to dismiss, even *pro se* litigants must provide grounds for an entitlement to relief and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Lowe v. Delta Air Lines, Inc.*, 730 F. App'x 724, 728 (11th Cir. 2018).

### f.    Motion for Judgment on the Pleadings

The standard applicable to motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is similar to that for Rule 12(b)(6). In evaluating a motion for judgment on the pleadings, the court must accept all facts in the complaint as true and view them in the light most favorable to the non-

moving party. *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d. 962, 965 (11th Cir. 2014) (quoting *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010)). "'Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.'" *Hart v. Hodges*, 587 F.3d 1288, 1294 n.4 (11th Cir. 2009) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). *See also Interline Brands*, 749 F.3d. at 965 (quoting *Cunningham*, 592 F.3d at 1255).

     **g.**     *Pro Se* **Parties**

The Court recognizes that Plaintiffs are appearing *pro se*. Thus, it must construe the Complaint leniently and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and punctuation omitted). *See also Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But even a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. The leniency the Court must apply does not permit it "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds as recognized in

*Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

## III.   JOHNS CREEK DEFENDANTS' MOTION TO DISMISS

For the reasons stated below, Defendants City of Johns Creek, Georgia, Brian Weaver, John Clifton, and Christopher Byers' Motion to Dismiss Complaint [ECF 37] is **GRANTED**. All claims against Weaver, Clifton, and Byers are **DISMISSED WITH PREJUDICE**. The claims against the City of Johns Creek are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs will have 21 days after entry of this Order to file a second amended complaint repleading the claims against the City of Johns Creek.

### a.   The Briefing

On May 14, 2019, the Johns Creek Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[60] They argue that the Amended Complaint does not allege any of them deprived Plaintiffs of any federal constitutional or statutory right.[61] According to the Johns Creek Defendants, Plaintiffs have at best alleged conduct that might constitute a state-law tort.[62]

---

[60]   ECF 37.

[61]   ECF 37-1, at 2, 5.

[62]   *Id.* at 10, 15.

These Defendants also contend that the individuals (Weaver, Clifton, and Byers) are protected by qualified immunity.[63]

The Johns Creek Defendants' recitation of facts is not strictly based on the allegations in the Amended Complaint and incorporates information gleaned from the Johns Creek Defendants' own knowledge. For example, they assert that Defendants Weaver, Clifton, and Byers are police officers with the Johns Creek Police Department.[64] While this may in fact be true, it is not at all apparent from the face of Plaintiffs' pleadings. The Johns Creek Defendants also contend that the Amended Complaint alleges that Defendant Hobbs is an officer with the Forsyth County Police Department.[65] Again, while likely true, this is not something contained in the pleadings. Neither the Court nor Defendants should attempt to rewrite a *pro se* plaintiff's complaint. *Campbell*, 760 F.3d at 1168–69 (leniency toward *pro se* pleadings does not give court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action").

---

[63]  *Id.* at 2.

[64]  *Id.*

[65]  *Id.*

While the Johns Creek Defendants' filling-in of seemingly useful and uncontested details was likely done in an effort to aid the Court, it is ultimately not helpful to their—or Plaintiffs'—cause. The Court must rely on the scant details that are actually contained in the Amended Complaint. And this is where Plaintiffs' problems lie. On a motion to dismiss, both the Court and Defendants are bound by the well-pleaded allegations in the complaint. *Twombly*, 550 U.S. at 570; *Am. Dental Ass'n*, 605 F.3d at 1289.

### i.    The First Opposition

Williams Miller opposed the Johns Creek Defendants' motion to dismiss on May 22, 2019, in a document that was sealed to the public because it contains account information.[66] His three-page filing argues that the Court has been provided with video showing "Lt. Strano" (who is not a defendant) and Defendant Hobbs breaking into Williams Miller's car without a warrant.[67] Williams Miller's

---

[66]    ECF 41 ("[A] new Chase Bank savings account has been open by which 'Relief funds' can be deposited. Payments can be broken up into 4 equal installments that span 4 years. Account deposit information is included with this motion to be shared with all defendants.").

A publicly available, nearly identical version of this response with "typo and grammar corrections" was filed on May 23, 2019. ECF 42, at 3.

[67]    *Id.* at 1. The video, which the Court has reviewed, does not clearly support Plaintiffs' claims. It is difficult to determine what is being shown, since the video appears to have been recorded at night in very low light. It does, however, appear to show two people in uniform outside of a car, opening the

opposition filing does not address the particular arguments raised by the Johns Creek Defendants; rather, it seems to proceed on the flawed assumption that the Court has already ordered Defendants to pay the amounts Plaintiffs seek.[68] If so, Plaintiffs are mistaken.

### ii.   The Second Opposition

Also on May 22, 2019, Williams Miller filed a separate, second response to the Johns Creek Defendants' motion to dismiss.[69] The Clerk of Court construed this response as a "motion." In this filing, Williams Miller contends that Plaintiffs "are filing this specific **MOTION to 'clearly specify relief'** in the U.S. District Court of Northern Georgia' but adjusted for the illegal incarceration and attempt [*sic*] murder of John W. Miller."[70] Williams Miller goes on to specify that Plaintiffs are seeking $150 million each from Johns Creek and Forsyth County and

---

door, and leaning in at various points. May 24, 2019 Docket Entry (re ECF 44). It is impossible for the Court to identify, among other things, the individuals present, the make/model of the car, and what the participants are doing.

[68] *Id.* at 2 ("Forsyth et. al and City of Johns Creek et al objection of (*not reading earlier communications [now over a 3 year span] from the U.S. District Courts of Baltimore and U.S. District Courts of Northern Georgia is your mistake*) assign 'relief amounts' have been '**restated**' in the JC response motion. Deposit information is now being provided to **all** defendants.").

[69] ECF 44.

[70] *Id.* at 1.

$15 million each from every individual defendant.[71] The Court notes that these amounts appear to be inconsistent with the total damages sought in the Amended Complaint.[72]

Williams Miller's second opposition again misapprehends the nature of the Johns Creek Defendants' motion to dismiss. A Rule 12(b)(6) motion is not generally designed to compel a plaintiff to specify the total amount of damages he seeks. Rather, its purpose is to have a plaintiff explain how his allegations constitute a legal claim that, if true, would entitle him to obtain relief from a court. *Am. Dental Ass'n,* 605 F. 3d at 1289 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citing *Twombly*, 550 U.S. at 570). Simply reciting exceedingly large amounts of alleged damages is not sufficient to satisfy this standard.

Despite the fact that Williams Miller's "Motion to Clearly Specify Relief" is clearly a second response to the motion to dismiss, the Johns Creek Defendants filed an opposition.[73] These Defendants argue that the "motion" only "specifies the amount of damages apportioned to each" named defendant and that Plaintiffs

---

[71]   *See generally id.*

[72]   *Compare id. with* ECF 7, at 4.

[73]   ECF 48.

are not entitled to damages against them.[74] The Forsyth County Defendants also opposed the "Motion to Clearly Specify Relief."[75]

### iii.   Williams Miller's Subsequent Responses

Even after the two May 22 filings, Williams Miller continued to file what were effectively opposition briefs—despite his styling of them as motions to dismiss the Johns Creek Defendants' motion to dismiss.[76] The Johns Creek and Forsyth County Defendants both objected to these filings.[77]

On June 17, 2019, Williams Miller filed another opposition in the form of a "motion challenging Johns Creek motion to continued dismissal of felony crime(s) committed in their jurisdiction on July 23, 2016."[78] The Johns Creek and Forsyth County Defendants objected to this motion, too.[79] Since these subsequent

---

[74]   *Id.* at 2.

[75]   ECF 50.

[76]   ECF 53, at 1–3 (motion "to reject 'Johns Creek Defendants' to dismiss our claims against them" and "motion to deny dismissal of our claims against the 'Johns Creek Defendants,'"); ECF 54, at 1-3; ECF 117, at 1 (motion for denial of John Creek Defendants' attempt to dismiss "U.S. Constitutionally Backed Demand Jury Trial").

ECF 53 and ECF 54 appear to be identical.

[77]   ECF 64 (Forsyth Cty. Defs.); ECF 67 (Johns Creek Defs.).

[78]   ECF 57.

[79]   ECF 64 (Forsyth Cty. Defs.); ECF 67 (Johns Creek Defs.).

responses [ECF 44, 53, 54, 57, 117] represent Williams Miller's *third through sixth* filings opposing the Johns Creek Defendants' motion to dismiss, they are **DISREGARDED** as having been improperly filed without leave. *See, e.g.,* LR 7.1(F), NDGa. To the extent Williams Miller intends such filings to be motions, they are **DENIED** for failing to conform to the requirements of the Court's local rules. *Id.*

### b.   Discussion

#### i.   Section 1983

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 is not a source of rights—it is a method to vindicate existing federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). When a court considers a 1983 claim, it must identify the specific constitutional or federal right allegedly infringed. *Graham*,

490 U.S. at 393–94; *Baker*, 443 U.S. at 140. The rights Plaintiffs allege the Johns Creek

Defendants violated are discussed *seriatim*.

### 1.    Failure to File Police Report

Plaintiffs allege that Defendant Weaver (one of the individual Johns Creek

Defendants) refused to permit Williams Miller to file a police report against

Defendant Hobbs for the alleged attempted murder of Frazer Miller.[80] The Johns

Creek Defendants argue that this alleged failure cannot give rise to a Section 1983

action because Plaintiffs have no federally protected right, under the First

Amendment or any other constitutional provision, to have police reports filed.[81]

In support of their arguments, the Johns Creek Defendants cite *Etienne v. EBR-

COA*, Civil Action 17-445-SDD-RLB, 2018 WL 2124890 (Apr. 17, 2018), adopting

report and recommendation, 2018 WL 2125943 (M.D. La. May 7, 2018), and *Correia

v. Town of Framingham*, 969 F. Supp. 2d 89 (D. Mass. 2013). Williams Miller presents

no legal argument or authority to the contrary.

The Court agrees with the Johns Creek Defendants and the authorities on

which they rely. In *Etienne*, the magistrate judge concluded that "[f]ailure to file a

police report, even by the police, is not a constitutional violation." 2018 WL

---

[80]   ECF 7-1, at 6.

[81]   ECF 37-1, at 6–7.

2124890, at *3. In *Correia*, the district court concluded that "an officer's failure to file a police report, in furtherance of an alleged conspiracy to cover-up wrong-doing, does not constitute an independent constitutional violation." 969 F. Supp. 2d at 98 (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980) and *Bush v. City of Philadelphia*, Civ. No. 98-0994, 1999 WL 554585, at *4–7 (E.D. Pa. July 16, 1999)).

## 2. Failure to Provide Police Protection to the Miller Family

The alleged failure to provide protection to Plaintiffs' family does not state a Section 1983 claim, according to the Johns Creek Defendants, because there was no special relationship between them and Plaintiffs.[82] In support of their argument, these Defendants cite this Court's decision in *Trethewey v. DeKalb Cty.*, 662 F. Supp. 246, 248 (N.D. Ga. 1987).

*Trethewey* makes clear that there is no general constitutional right to police protection absent (1) a special relationship between the victim and the officials (or victim and the criminal) or (2) a special danger not faced by the public at large. 662 F. Supp. at 248 (citing *Martinez v. California*, 444 U.S. 277 (1980); *Jones v. Phyfer*,

---

[82]  *Id.* at 8.

761 F.2d 642, 644–45 (11th Cir. 1985); *Wright v. City of Ozark*, 715 F.2d 1513, 1515 (11th Cir. 1983)).

Plaintiffs do not allege, and Williams Miller does not argue, that Plaintiffs had any special relationship with the Johns Creek Defendants such that Plaintiffs were thereby endowed with a constitutional right to police protection. Nor is there any allegation that Plaintiffs faced a special danger not faced by the public at large sufficient to create a constitutional right to police protection. Accordingly, the alleged failure to provide police protection to the Miller family cannot give rise to a Section 1983 action.

### 3.   Framing of Plaintiffs, Fabrication of Evidence, and False Charges

Plaintiffs allege that Defendants the City of Johns Creek and Byers moved signage for the county line between Fulton and Forsyth Counties in order to frame Frazer Miller, thereby violating Plaintiffs' Fourth Amendment rights.[83] The Johns Creek Defendants contend that these allegations about the fabrication of evidence and false charges cannot state a Section 1983 claim because "there is no allegation that JCPD, as opposed to the Forsyth County Police Department, actually brought

---

[83]   *Id.* at 9.

charges against either Plaintiff."[84] These Defendants also assert that nothing in the Amended Complaint alleges they ever "cited, arrested, or even performed a search" on Frazer Miller.[85]

While it is true that the Amended Complaint does not allege the Johns Creek Police Department arrested Frazer Miller,[86] it does assert that Defendant Yi "lied and illegally put John F. Miller in jail . . . when 'HE COMMITTED ABSOLUTELY NO CRIME AT ALL.'"[87] There is no allegation in the Amended Complaint about whether Yi works for Johns Creek or Forsyth County. The most favorable reading, however, indicates that Yi also worked for Forsyth County[88]—which is consistent with her filings in this action.[89]

In order to establish a Fourth Amendment violation sufficient to state a Section 1983 claim, Plaintiffs were required to allege an unconstitutional search or

---

[84]   *Id.* at 8.

[85]   *Id.* at 9.

[86]   ECF 7-1, at 3 (alleging Frazer Miller was "illegally kindnapped [sic] by Forsyth County Police on private property in another county with no warrant whatsoever"); *id.* at 4 (alleging "Christopher Byers and Johns Creek City took down decades old county line signage to change county boundaries to frame John F Miller").

[87]   *Id.* at 3.

[88]   *Id.* at 3.

[89]   *See, e.g.*, ECF 49.

seizure. *Young v. Brady*, 793 F. App'x 905, 910 (11th Cir. 2019) (seizure within meaning of Fourth Amendment occurs when reasonable person would not feel free to leave); *Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 914–15 (11th Cir. 2007) (same) (citing *United States v. Mendenhall*, 446 U.S. 544 (1980)). But there is no allegation in the Amended Complaint suggesting that any of the *Johns Creek Defendants* ever stopped, searched, detained, or seized either Plaintiff. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (arrest constitutes seizure). Moreover, "the filing of a false police report is not itself a constitutional violation." *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009).

Plaintiffs' pleading also alleges that "the Forsyth County Police Department in cooperation with Johns Creek (Jim Crow) Police Dept 1) fabricated evidence, 2) state[d] false charts which were proven false in court . . . ."[90] These allegations are, however, too vague to state a claim. *Twombly*, 550 U.S. at 570; *Am. Dental Ass'n*, 605 F. 3d at 1289. Moreover, an alleged conspiracy to do something that is not a constitutional violation cannot itself be a constitutional violation. *Youngblood*, 224 F. App'x at 915 (in civil rights action, concluding civil conspiracy claim failed because plaintiffs did not show underlying constitutional violation).

---

[90]   ECF 7-1, at 3.

### 4.      Terroristic Threats

The Amended Complaint alleges that both the Johns Creek Police Department and Forsyth County police have "terrorized" Plaintiffs.[91] These departments are not, however, parties to this lawsuit. The Amended Complaint also asserts that Defendants Clifton and Byers (two of the individual Johns Creek Defendants) made terroristic threats against Williams Miller, that the Johns Creek Police Department leadership are "Domestic Terrorist[s]," and that this conduct contributed to the premature death of Williams Miller's mother.[92]

In response, the Johns Creek Defendants argue that "mere 'threats'" do not give rise to a Section 1983 cause of action.[93] Plaintiffs point to no law to the contrary. The Court agrees with Defendants: "A section 1983 claim only accrues when the threats or threaten[ed] conduct result in a constitutional deprivation." *Lamar*, 698 F.2d at 1286. Plaintiffs have not explained how threats allegedly made by the Johns Creek Defendants deprived Plaintiffs of any constitutional rights. Without such allegations, Plaintiffs cannot state a claim.

---

[91]   ECF 7, at 4; ECF 15, at 2.

[92]   ECF 7, at 4; ECF 7-1, at 1.

[93]   ECF 37-1, at 9 (citing *Lamar v. Steele*, 698 F.2d 1286, 1287 (5th Cir. 1983); *Macko v. Byron*, 576 F. Supp. 875, 880 (N.D. Ohio 1983)).

Because Plaintiffs have failed to allege an underlying constitutional violation, they have not stated a claim and the causes of action against the Johns Creek Defendants must be **DISMISSED**. As discussed further below, the individual Johns Creek Defendants (Weaver, Clifton, and Byers) are entitled to qualified immunity, so the claims against them will be dismissed with prejudice. While Plaintiffs will be given leave to replead their claims against the City of Johns Creek, the Court notes that there is nothing in the Amended Complaint about the city itself. Rather, Plaintiffs' allegations are directed toward the Johns Creek Police Department. Plaintiffs do not explain why the city is responsible or liable for the conduct of the police department. In order to satisfy the pleading standard, Plaintiffs must allege sufficient facts for the Court to make the inference that there is more than a "sheer possibility" the City of Johns Creek is liable for some misconduct. *Twombly*, 550 U.S. at 556; *Am. Dental Ass'n*, 605 F.3d at 1289.

### ii.   Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform

their duties reasonably." "[Q]ualified immunity is a privilege that provides 'an *immunity from suit* rather than a mere defense to liability.'"

To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority. The burden then shifts to the plaintiff to overcome the defense of qualified immunity.

*Case*, 555 F.3d at 1325 (quoting, respectively, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008)).

The individual Johns Creek Defendants argue that they are protected by qualified immunity.[94] To overcome that immunity, Plaintiffs were required to allege not just the violation of a constitutional right but that such right was clearly established.[95] Among other things, Plaintiffs accuse the Johns Creek Defendants of declining to issue a police report against Hobbs; refusing to provide protection services to the Millers; making threats against Williams Miller; and altering county-line signage in order to frame Frazer Miller.[96]

---

[94]   ECF 37-1, at 11.

[95]   *Id.* at 12.

[96]   *See supra* Section III.b.i.

The individual Johns Creek Defendants assert that all such conduct would have been discretionary.[97] Plaintiffs do not contest that assertion. As a result, the burden shifts to Plaintiffs to show (1) the violation of a clearly established constitutional right (2) of which a reasonable person would have known. *Case*, 555 F.3d at 1325. They have not carried their burden as to either part of the test.

As discussed extensively above, Plaintiffs have not pointed to *any* constitutional right that was violated by the individual Johns Creek Defendants.[98] If there is no right, it necessarily cannot have been something a reasonable person would have known. In fact, the case law discussed above demonstrates that a reasonable person would not have believed the conduct at issue involved a constitutional right at all. *See, e.g.*, *Lamar*, 698 F.2d at 1286 (threats alone insufficient to create a Section 1983 claim); *Young*, 793 F. App'x at 910 (Fourth Amendment seizure occurs when reasonable person would not feel free to leave); *Trethewey*, 662 F. Supp. at 248 (no general constitutional right to police protection absent special relationship or special danger); *Correia*, 969 F. Supp. 2d at 89 (failure to file police report not independent constitutional violation). No amount of repleading will alter these basic principles. Accordingly, Defendants Weaver, Clifton, and

---

[97]  ECF 37-1, at 12.

[98]  *See supra* Section III.b.i.

Byers are entitled to qualified immunity and all claims against them are **DISMISSED WITH PREJUDICE**.

## IV.   JUDGE MCBURNEY'S MOTION TO DISMISS

Robert McBurney is a judge on the Fulton County, Georgia Superior Court.[99] As his motion to dismiss notes, the allegations against him are "sparse."[100] In short, the contentions about Judge McBurney's purported misconduct are as follows:

> John W Miller filed a warrant for the arrest of Michael Hobbs for Felony Assault/attempted murder and Felony Theft. I went with my son to the court of Judge Robert C.I. McBurney. Neither my son nor I had never ever encountered/engage[d] that Judge. Both me and my son showed up in court. After [I] stated why I flew in from Maryland and we [were] exercising our 1st and 14th amendment rights [to] face Michael Hobbs, that corrupt Judge stated clearly "Well you were not there at your home". Both me and my son (John F. Miller) were taken aback looked at each other and with[out] speaking to each other rapidly processed that this Judge had been talking with either the JCPD (Jim Crow Police Dept) and/or Forsyth Police dept. He stated that Michael Hobbs DID NOT have to show up in his court!!! Judge McBurney clearly violated our constitutional and civil rights, it was obvious that he had contempt for me and my son. McBurney DIRECTLY CONTRBUTED [sic] TO THE DEATH OF MY MOTHER!!!!!
>
> . . . .

---

[99]   *See supra* n.9.

[100]   ECF 45, at 2.

> Ideally this corrupt Judge that does not respect the
> United States Constitution should be removed from that
> critically important position that should enforce the
> constitution[,] not treat it like toilet paper!!! Judge
> McBurney conspired illegally with corrupt police to
> silence me and my son.[101]

As relief, Plaintiffs request that Judge McBurney pay for Frazer Miller's

undergraduate and graduate education.[102] While the Amended Complaint does

not seek a specific dollar amount of damages from Judge McBurney, a subsequent

filing by Williams Miller clarifies that Plaintiffs are seeking $15 million from the

state court judge.[103]

### a.    The Briefing

On May 29, 2019, Judge McBurney filed a motion to dismiss the Amended

Complaint based on, among other things, absolute judicial immunity and Section

1983 itself.[104] He contends that judges acting within their official judicial functions

have absolute immunity from civil suits for money damages. He also argues that

---

[101]  ECF 7-1, at 8.

[102]  *Id.*

[103]  ECF 44, at 2.

[104]  ECF 45.

any monetary claims against him are barred by the Eleventh Amendment and that any claim against him in his official capacity is barred by Section 1983 itself.[105]

### *i.*   **Williams Miller's Responses**

Williams Miller's June 4, 2019 response to Judge McBurney's motion repeats the allegations in the Amended Complaint and attempts to raise new claims.[106] As already stated, Williams Miller cannot amend his pleadings in this manner. *Allstate*, 2015 WL 5737371, at *7 (plaintiff cannot amend complaint in responsive brief). Second, he provides no case law or arguments suggesting why the legal arguments presented by Judge McBurney are incorrect. On June 18, 2019, Judge McBurney filed a reply in support of his motion.[107]

Despite the flaws in his initial response, Williams Miller filed multiple oppositions to Judge McBurney's motion to dismiss. On June 13, 2019, Williams Miller filed a "motion to reject Judge McBurney claim for qualified immunity."[108] This filing lacks any reference to case law suggesting why Judge McBurney is not

---

[105]   To the extent that Judge McBurney's motion to dismiss argues the Amended Complaint does not state a claim for a constitutional violation, those issues are addressed in connection with the Johns Creek Defendants' motion to dismiss and are equally applicable to Judge McBurney. *See supra* Section III.b.i.

[106]   ECF 47.

[107]   ECF 58.

[108]   ECF 53, at 1.

entitled to immunity. On June 24, 2019, Williams Miller filed another opposition, framed as a "motion in opposition of Judge McBurney's renewed request for 'qualified immunity.'"[109] This request was coupled with a motion to "[f]ocus strictly on the 'facts.'"[110] On June 26, 2019, Williams Miller filed a "motion in opposition of Judge McBurney's renewed request for 'qualified immunity.'"[111] That filing repeats the arguments made in his June 24 response, complete with the same emphasis and enlarged/bolded fonts.[112] Judge McBurney opposed Williams Miller's June 26 motion on July 10, 2019.[113]

On July 15, 2019, Williams Miller filed yet another "motion" responding to Judge McBurney's immunity arguments.[114] Again, though styled as a motion, the filing does not appear to request any relief from the Court and repeats many of the allegations Williams Miller made in numerous other filings. Judge McBurney

---

[109]      ECF 62 & 63. These filings appear to be identical. The Forsyth County Defendants objected to them on June 26, 2019. ECF 64.

[110]   ECF 62, at 4–5.

[111]   ECF 65, at 2–5. This filing appears to be identical to ECF 66.

[112]   *Compare* ECF 65 *with* ECF 62.

[113]   ECF 70. The Forsyth County and Johns Creek Defendants opposed the motion on July 11, 2019. ECF 71 (Forsyth Cty. Defs.); ECF 72 (Johns Creek Defs.).

[114]   ECF 73.

opposed the motion on July 30, 2019.[115] The Forsyth County and Johns Creek Defendants also opposed the motion.[116] On August 7, Williams Miller filed a "motion" clarifying his response to Judge McBurney's opposition.[117] All Defendants opposed that August 7 filing.[118]

On August 25, 2019, Williams Miller filed a long invective against, among other things, Judge McBurney's assertion of absolute judicial immunity.[119] Williams Miller reiterated many of the arguments he had previously made and demanded an FBI investigation of the judge.[120] On September 6, 2019, Judge McBurney filed an opposition to this submission.[121] On September 9, Williams Miller again attacked Judge McBurney's assertion of judicial immunity.[122]

These numerous, serial oppositions [ECF 53, 62, 63, 65, 73, 83, 96, 105] to Judge McBurney's motion to dismiss are **DISREGARDED** as having been

---

[115]  ECF 79.

[116]  ECF 80, 81.

[117]  ECF 83.

[118]  ECF 90 (Johns Creek Defs.); ECF 88 (Forsyth Cty. Defs.); ECF 91 (Judge McBurney).

[119]  ECF 96, at 7–9.

[120]  *Id.* at 8.

[121]  ECF 103.

[122]  ECF 105, at 1–2.

improperly filed without leave. *See, e.g.*, LR 7.1(F), NDGa. To the extent Williams Miller intends such filings to be motions, they are **DENIED** for failing to conform to the requirements of the Court's local rules. *Id.*

### b.    Discussion

Plaintiffs' Amended Complaint is subject to dismissal for its basic failure to comply with Federal Rule of Civil Procedure 8—providing a short and plain statement showing that Plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2). Dismissal on that basis, however, would potentially permit Plaintiffs to replead their allegations. Since any such revisions would be futile, further discussion is required.

### i.    Judge McBurney Is Entitled to Absolute Judicial Immunity Against Suit for Damages.

Judges are immune to suit for damages under Section 1983—even when their judicial acts exceed their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). They are entitled to immunity when their actions are erroneous or done maliciously. *Id.* at 356–57; *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Liability exists only when a judge acts in the clear absence of all jurisdiction. *Stump*, 435 U.S. at 357 (quoting *Bradley v Fisher*, 13 Wall. 335, 351 (1872)).

The Amended Complaint makes clear that the alleged conduct in which Judge McBurney engaged consists entirely of acts within his jurisdiction as a

Georgia superior court judge. Plaintiffs appeared before Judge McBurney, in court, in connection with their attempts to have Michael Hobbs prosecuted for his alleged assault against Frazer Miller.[123] Plaintiffs' claim against Judge McBurney essentially boils down to the complaint that the judge violated their rights by refusing to require Hobbs to appear in court.[124]

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

*Stump*, 435 U.S. at 362. *See also Mireles*, 502 U.S. at 12 (quoting *Stump*, 435 U.S. at 362), *superseded by statute on other grounds*, Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 309(c), 110 Stat. 3847; *Rolleston v. Eldridge*, 848 F.2d 163, 164 (11th Cir. 1988) ("To determine whether judicial immunity can properly apply, we examine first, whether Judge Eldridge dealt with the plaintiff in a judicial capacity and second, whether the judge acted in the 'clear absence of all jurisdiction.'") (citing *Stump*, 435 U.S. at 355–57; *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986)).

---

[123]  ECF 7-1, at 8.

[124]  *Id.*

Conducting hearings and presiding in court are core functions within a judge's jurisdiction. Here, Plaintiffs allege that they were in court appearing before Judge McBurney to plead for the arrest of Michael Hobbs.[125] Both factors in the *Stump* test are therefore met. *See* O.C.G.A. § 15-1-3(4) ("Every court has power . . . To control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto . . . ."); O.C.G.A. §§ 15-6-8, 15-6-9 (enumerating powers of Georgia superior courts). Accordingly, Judge McBurney's actions are protected by absolute judicial immunity from monetary damages.

There is no indication here that Judge McBurney acted in the absence of jurisdiction. From the sparse allegations against him, Plaintiffs' problem with Judge McBurney seems to be that he *refused* to exercise his authority to compel Hobbs to appear in court.[126] This purportedly violated Plaintiffs' constitutional rights and contributed to the death of Williams Miller's mother.[127] "Disagreement with the action taken by the judge, however, does not justify depriving that judge of his immunity." *Stump*, 435 U.S. at 363. "A judge is absolutely immune from

---

[125] *Id.*

[126] *Id.*

[127] *Id.*

liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359.

The Amended Complaint also suggests that Judge McBurney conspired with the Johns Creek Police Department or the Forsyth Police Department.[128] To what end is unclear from the pleading. And, without delving into whether the conspiracy allegations are even sufficiently well pleaded, if the supposed conspiracy is what led to Judge McBurney's alleged in-court rulings, such actions are also protected by absolute judicial immunity from monetary damages. *Stump,* 435 U.S. at 357–59.

Plaintiffs never allege that Judge McBurney acted without jurisdiction. They simply assert that he violated their "constitutional and civil rights" and acted "illegally."[129] Such allegations are simply insufficient to overcome Judge McBurney's entitlement to absolute immunity.

### ii.     Section 1983 Is Inapplicable to Official Capacity Claims.

Even if judicial immunity were inapplicable, Plaintiffs' claims against Judge McBurney plainly relate to his official capacity as a judge.[130] However, a state

---

[128]   *Id.*

[129]   *Id.*

[130]   *Id. See also* ECF 47, at 3 ("For Judge McBurney—It is documented that, as required by law, you did not require Michael Hobbs to come to court nor issue

governmental official acting in his official capacity is not a "person" under Section 1983 when the plaintiff is seeking monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, 71 n.10 (1989). Since Judge McBurney is not a "person" under Section 1983, Plaintiffs' claims against him must fail.

Judge McBurney is entitled to absolute judicial immunity against monetary damages. Further, because he is alleged to have acted in his official capacity as a judge, he is not subject to suit under Section 1983. No level of repleading can overcome these legal hurdles. Accordingly, Judge McBurney's motion to dismiss [ECF 45] is **GRANTED** and all claims against him are **DISMISSED WITH PREJUDICE**. The Court therefore finds it unnecessary to address any additional arguments raised by the parties with regard to the claims against him.

## V.    JUDGE MCBURNEY'S MOTION FOR PROTECTIVE ORDER

On September 6, 2019, Judge McBurney filed a motion for a protective order, requesting that "he be relieved of any obligation to respond to Plaintiffs' motions, notices, etc. pending final resolution of his motion to dismiss."[131] On September 12, 2019, the Court entered the following order:

---

a warrant to force him into court. That is a clear, deliberate, 'preplanned' violation of our constitutional rights (100% Proof of Conspiracy and Collusion).") (emphasis removed).

[131]    ECF 104, at 1.

> Pursuant to the Court's inherent authority to control its docket, which now contains twenty-five motions, the Court orders that no additional responsive filings (for any pending or future-filed motions) are required from any of the parties until further order of the Court, with the exception of [Judge McBurney's] motion for protective order . . . .[132]

Because this Order effectively granted the relief requested in Judge McBurney's motion and he is being dismissed from this action with prejudice, his motion for a protective order [ECF 104] is **DENIED AS MOOT**.

## VI.   FORSYTH COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

As to the Forsyth County Defendants, Plaintiffs assert that: (1) Frazer Miller's prosecution in Forsyth County was illegal because that county had no jurisdiction;[133] (2) Defendant Hobbs committed assault/attempted murder against Frazer Miller because of Frazer Miller's race, trespassed on Williams Miller's property, stole the house keys of Williams Miller's deceased father, and told unspecified lies;[134] (3) the Forsyth County police conspired with the Johns Creek Police Department and terrorized Plaintiffs and their family (which "domestic

---

[132]   ECF 107, at 1.

[133]   ECF 7, at 3; ECF 7-1, at 4.

[134]   ECF 7, at 4; ECF 7-1, at 5, 7.

terrorism" purportedly caused the death of Williams Miller's mother);[135] (4) Defendant Yi illegally revoked Frazer Miller's driving license and put him in jail;[136] and (5) the Forsyth County police kidnapped Frazer Miller.[137]

### a. The Briefing

On June 7, 2019, Defendants Forsyth County, Hobbs, and Yi answered the Amended Complaint and then filed a motion for judgment on the pleadings.[138] Even though Walnut was not named as a Defendant, she joined in the answer and motion because Plaintiffs had purported to serve her with the Amended Complaint.[139]

The Forsyth County Defendants argue that the Amended Complaint is a shotgun pleading that does not state a claim.[140] Walnut asserts that Plaintiffs' claims are barred by the applicable statutes of limitation.[141] Defendant Yi further claims that she is entitled to prosecutorial immunity.[142]

---

[135] ECF 7, at 4; ECF 15, at 2.

[136] ECF 7-1, at 2, 3.

[137] *Id.* at 3.

[138] ECF 38, 49.

[139] ECF 38, at 1 n.1.

[140] ECF 49-1, at 2, 17–18.

[141] *Id.* at 15–17.

[142] *Id.* at 2, 13–15.

On June 13, 2019, Williams Miller filed an opposition to the motion for judgment on the pleadings.[143] To the extent this filing purports to be a motion "to reject 'Forsyth Criminals' and Caroline Yi motion to dismiss our claims against them," it is **DENIED** for the reasons stated below.[144] To the extent Williams Miller's filing represents an opposition brief, he asserts that Defendant Yi lacked the authority to prosecute Frazer Miller and that Walnut, Defendant Hobbs, and others have no immunity because they did not have jurisdiction over Frazer Miller.[145] Williams Miller's opposition, however, provides no legal authority for his arguments.

On June 17, 2019, Williams Miller filed another opposition to the Forsyth County Defendants' motion.[146] This second opposition brief was filed without leave and will therefore be **DISREGARDED** as having been improperly filed without leave. *See, e.g.*, LR 7.1(F), NDGa.

---

[143]  ECF 53, at 3–4.

[144]  ECF 53 & 54.

[145]  ECF 53, at 3.

[146]  ECF 57.

### b.    Discussion

### i.    Lisa Walnut Was Never Made a Party to this Action.

Although they purported to serve her with the Amended Complaint, Plaintiffs never properly named Walnut as a defendant in this action.[147] Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties."). Moreover, although the sheriff's entry of service states that Walnut was personally served with a copy of the complaint and summons,[148] this cannot possibly be true because no summons for her was filed with the complaint and no summons for her was signed and sealed by the clerk of this Court or the District of Maryland (where this litigation originated).[149]

Further, Plaintiffs were required to serve all defendants with a copy of the complaint and a proper summons. They have the burden of demonstrating that service was proper. Fed. R. Civ. P. 4; *Fitzpatrick v. Bank of New York Mellon*, 580 F. App'x 690, 694 (11th Cir. 2014) (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 436 (5th Cir. Unit A Jan. 1981)).

---

[147]   ECF 35.

[148]   *Id.*

[149]   ECF 1-3; ECF 9–14.

Moreover, the Court has already warned Plaintiffs about the consequences of their failure to timely serve process.[150]

Because Plaintiffs did not properly name or serve Walnut, she is not a party to this action and the Court has no personal jurisdiction over her. *Abele v. City of Brooksville, Fla.*, 273 F. App'x 809, 811 (11th Cir. 2008) (service of process not in "substantial compliance" with federal rules cannot confer personal jurisdiction over putative defendant even when putative defendant has actual notice of filing of suit) (citing *Prewitt Enter., Inc. v. OPEC*, 353 F.3d 916, 925 (11th Cir. 2003)).

Any claims against Walnut are **DISMISSED WITHOUT PREJUDICE**. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Because the Court does not rule on the other defensive arguments raised by Walnut, she may reassert them if appropriate.

### c.    Plaintiffs Failed to Properly Effect Service on Forsyth County.

Plaintiffs have the burden of demonstrating proper service on each Defendant. Fed. R. Civ. P. 4; *Fitzpatrick*, 580 F. App'x at 694. As with Walnut, there is no evidence that Plaintiffs ever even attempted to serve Forsyth County.[151]

---

[150] ECF 24, at 1–2 (ordering Plaintiffs to file proofs of service or show cause why service had not been made).

[151] *See generally* ECF 9–14.

Because Plaintiffs did not properly serve Forsyth County, it is not a party to this action and the Court has no personal jurisdiction over it. *Abele*, 273 F. App'x at 811. Accordingly, all claims against Defendant Forsyth County, Georgia are **DISMISSED WITHOUT PREJUDICE**. Because the Court does not rule on the other defensive arguments raised by Forsyth County, it may reassert them if appropriate.

### d.   Plaintiffs Have Not Stated a Claim Against Defendant Michael Hobbs.

The main argument raised by Defendant Hobbs in seeking to dismiss this action is that Plaintiffs' Amended Complaint does not state a claim for relief. He contends that the pleading is shotgun and "almost indecipherable."[152] Hobbs also contends that he is entitled to qualified immunity.[153]

The core allegations against Hobbs are that, on or around July 23, 2016, he (and possibly other members of the Forsyth County police) assaulted and attempted to kill Frazer Miller because of his race while they were illegally on property owned by Williams Miller.[154] But Plaintiffs' contentions simply do not provide enough factual detail for the Court to conclude that they are plausible.

---

[152]   ECF 49-1, at 17.

[153]   *Id.* at 20–29.

[154]   ECF 7-1, at 5. *See generally* ECF 7, 7-1, 15, 16.

*Twombly*, 550 U.S. at 556; *Am. Dental Ass'n*, 605 F. 3d at 1289. There must be more than the sheer possibility that Defendant Hobbs acted unlawfully. *Iqbal*, 556 U.S. at 678. And Plaintiffs' Amended Complaint provides only bare—though oft repeated—conclusions about Hobbs's misconduct. The liberal construction the Court must give *pro se* pleadings does not permit it to cure such deficiencies. *Lowe v. Delta Air Lines Inc.*, 730 F. App'x 724, 728 (11th Cir. 2018) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)). *See also Lowe*, 730 F. App'x at 729 (upholding dismissal of *pro se* pleading that was "difficult to decipher and lack[ing] the specificity required to survive" Rule 12(b)(6) motion).

That said, the allegations against Defendant Hobbs *are* serious. Assuming their truth, Defendant Hobbs would not automatically be entitled to qualified immunity: attempting to kill a person because of his race would certainly violate constitutional rights a reasonable person would know about. *Brosseau v. Haugen,* 543 U.S. 194, 197–98 (2004) ("[I]t is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'") (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)); *Lundgren v. McDaniel*, 814, F.2d 600, 603 (11th Cir. 1987) (shooting suspected felon who was not fleeing or threatening constitutes unreasonable seizure and clear violation of Fourth Amendment). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the claims against Defendant Hobbs.

Plaintiffs will have a final opportunity to replead. If they choose to do so, Hobbs can reassert his qualified immunity defense at that time.

### e.   Defendant Caroline Yi Is Entitled to Absolute Immunity.

Plaintiffs allege that Yi illegally revoked Frazer Miller's driving license when he had "'committed no crime' at all."[155] The Amended Complaint contends that Williams Miller's mother suffered an "untimely death" because of the illegal prosecution of Frazer Miller.[156] Plaintiffs also assert that Yi "lied and illegally put [Frazer Miller] in jail."[157]

The Amended Complaint appears to allege that Defendant Yi is a prosecutor in Forsyth County.[158] This is also consistent with her filings in this case.[159] All of Plaintiffs' allegations against Yi are based on her function as a prosecutor. It is clear, however, that prosecutors have absolute immunity under Section 1983 for "initiating a prosecution and presenting the State's case," appearing before a court, and conduct in the courtroom. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009)

---

[155]   ECF 7-1, at 2.

[156]   *Id.*

[157]   *Id.* at 3.

[158]   *Id.* at 2 ("Caroline Yi illegally revoked John F. Miller's license . . . ."), 3 ("Caroline Yi lied and illegally put John F. Miller in jail . . . for 15 days.").

[159]   ECF 38; ECF 49.

(citations omitted). They are entitled to absolute immunity for acts (1) "undertaken in preparing for the initiation of judicial proceedings or for trial" and (2) that occur "in the course of the prosecutor's role as an advocate for the State." *Maps v. Miami Dade State Att'y*, 693 F. App'x 784, 786 (11th Cir. 2017). This entitlement to immunity does not change even when the prosecutor offers perjured testimony, suppresses evidence, or institutes charges without an investigation. *Maps*, 693 F. App'x at 786.

In short, a prosecutor "'enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate.'" *Hart*, 587 F.3d at 1295 (quoting *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999)). Because Plaintiffs' claims against Yi relate only to her conduct as an advocate, she is entitled to absolute prosecutorial immunity. Accordingly, Plaintiffs' claims against Defendant Yi are **DISMISSED WITH PREJUDICE**.

## VII.   MISCELLANOUS MOTIONS BY WILLIAMS MILLER

For ease of discussion, Williams Miller's various remaining motions are tackled by subject matter. The Court notes that none of the motions comport with the requirements of LR 7.1(A)(1)—despite the Court's April 4, 2019 directive that *all* future filings by Plaintiffs comply with both the Federal Rules of Civil

Procedure and this Court's Local Rules.[160] Despite the fact that Plaintiffs' repeated failures in this regard would permit the Court to disregard every non-compliant filing, it has not done so. Plaintiffs should not expect the Court to continue to be so accommodating in the future.

    **a.**    **Motion to Dismiss Defendants' Motions to Dismiss**

On June 26, 2019, Williams Miller filed a motion requesting, among other things, that Defendants' dismissal motions themselves be dismissed.[161] The Johns Creek Defendants, the Forsyth County Defendants, and Judge McBurney all opposed this motion.[162]

Generally, the proper method of addressing a motion to dismiss (or a motion for judgment on the pleadings) is to file an opposition brief. LR 7.1(B), NDGa ("Any party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen (14) days after service of the motion . . . ."). As made clear above, Williams Miller filed numerous "motions" objecting to Defendants' motions to

---

[160]  ECF 24, at 5.

[161]  ECF 65, at 1-2.

[162]  ECF 72 (Johns Creek Defs.); ECF 71 (Forsyth Cty. Defs.); ECF 70 (Judge McBurney).

dismiss.[163] To the extent that Williams Miller's request [ECF 65] that Defendants' motions to dismiss themselves be dismissed is intended to be a separate motion rather than a response brief, it is **DENIED** for the same reasons Defendants' motions to dismiss [ECF 37, 45, 49] have been **GRANTED**.

### b.    Motions to Appoint Counsel

Williams Miller first requested the appointment of counsel on November 2, 2018.[164] That motion was denied by the Court.[165] In his June 4, 13, and 17, 2019 filings, he again requested the appointment of counsel.[166] On June 24 and 26, 2019, Williams Miller withdrew the "request for potentially/probably inferior legal counsel."[167] Accordingly, Williams Miller's motions for the appointment of counsel [contained in ECF 47, 54, 57] are **DENIED AS MOOT**.

Even if Williams Miller had not withdrawn the requests, they were due to be denied. "A plaintiff in a civil case has no constitutional right to counsel." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Courts have broad discretion to

---

[163]  *See supra* Sections III.a.i.–iii., IV.a.i., VI.a. (discussing, *inter alia*, ECF 41, 42, 44, 47, 53, 54, 57, 62, 63).

[164]  ECF 17.

[165]  ECF 24, at 2–3.

[166]  ECF 47, at 6; ECF 53, at 4; ECF 57, at 5.

[167]  ECF 62; ECF 65, at 1.

appoint counsel for indigent plaintiffs; it is a "privilege" justified only in "exceptional circumstances." *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987)). Such circumstances exist when "the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Dean*, 951 F.2d at 1216. The Court concludes that the facts and legal issues here were not so novel or complex as to require the appointed assistance of a trained practitioner.

### c.    Motions for Sanctions

On July 3, 2019, Williams Miller filed a motion to "have Forsyth Counsel to Stop His Childish Unprofessional 'Colorful' Half Truths," contending (primarily) that counsel for the Forsyth County Defendants are wasting their clients' money.[168] That same filing also made the following motion: "Motion Don't Ever Insult/Demean Our Intelligence. We Know All To[o] Well Threats."[169] The Forsyth County Defendants opposed these motions on July 11, 2019.[170] The Johns Creek Defendants opposed on July 17.[171]

---

[168]   ECF 69, at 1–2.

[169]   *Id.* at 2.

[170]   ECF 71

[171]   ECF 74.

On August 12, 2019, Williams Miller filed a motion demanding that counsel for the Forsyth County Defendants read the Federal Rules of Civil Procedure.[172] On August 14, he made a similar motion, requesting that all defendants and their counsel "read the rules."[173] The Johns Creek Defendants objected to the August 14 motion.[174]

On August 28, 2019, Williams Miller requested an order directing Defendant Caroline Yi to "stop 'nonsense drivel.'"[175] His long exposition concerning what, exactly, counts as a curse word aside, derogatory, demeaning, and insulting comments such as those in Williams Miller's August 28 filing concerning Ms. Yi should not be presented in filings with the Court.[176] The Court expects all attorneys and *parties* who appear before it to practice civility and to treat each other and the Court with respect.

---

[172]   ECF 84.

[173]   ECF 87, at 2.

[174]   ECF 90.

[175]   ECF 96, at 9.

[176]   *Id.* at 9–10.

For additional examples of inappropriate personal attacks by Williams Miller, *see also* ECF 99, at 3–4; ECF 105, at 1.

The Court construes Williams Miller's filings of this nature to be motions for sanctions under Rule 11. As such, they [ECF 69, 84, 87, 96, 99, 105] are **DENIED**. There is no evidence Plaintiffs complied with that rule's procedural requirements. *See, e.g.*, Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Nor does the Court find any basis to *sua sponte* direct Defendants or their counsel to show cause why they have not violated Rule 11. Defense counsel have vigorously represented their clients and attempted to address all of William Miller's improper filings. There is nothing sanctionable about such conduct. *See, e.g.*, Ga. R. Prof. Conduct, Preamble [1] (2001) ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.").

### d.   Motions for Protection/for Restraining Orders/to Seize Defendants

Williams Miller filed several motions asking for restraining orders, that Defendants be "seized," or for some form of protection.[177] Defendants, naturally,

---

[177]   *See, e.g.*, ECF 93 (MOTION: Restraint Order to all Defendants); ECF 96, at 9

opposed such motions.[178] On August 14, 2019, Williams Miller filed a motion

requesting that the Court have the Forsyth County Defendants arrested under

Rule 64 of the Federal Rules of Civil Procedure.[179] Rule 64 provides:

> [E]very remedy is available that, under the law of the
> state where the court is located, provides for seizing a
> person or property ***to secure satisfaction of the potential
> judgment*** . . . include[ing] . . . arrest.

Fed. R. Civ. P. 64(a), (b) (emphasis added). Williams Miller seeks this relief for the

"protection" of the Miller family.[180] Both the Johns Creek and Forsyth County

---

(MOTION: Again Request Issuance of Restraining Orders and/or Incarcerate Identified Criminals/Domestic Terrorist); ECF 110 (requesting various forms of protection from and various restraints of Defendants); ECF 117, at 2 (<u>MOTION</u> Ban FSCO and JCPD from Patrolling and/or Attacking American Citizens on McGinnis Ferry Road); ECF 118 (requesting various forms of protection); ECF 121 (MOTION Request Immediate Ruling on Federal Protection from Racist Terrorist Groups of Jim Crow Police Department and Forsyth County Sheriff's Office).

[178]  *See, e.g.*, ECF 98 (Forsyth Cty. Defs.); ECF 101 (Judge McBurney); ECF 102, 106 (Johns Creek Defs.).

Although their reason for doing so is not entirely clear, counsel for Walnut and Hobbs also opposed this motion. ECF 95. In addition, counsels' brief purported to provide further evidence that was not in the record in support of Walnut and Hobbs's motion for sanctions. *Id.* at 2.

[179]  ECF 87. *See also* ECF 117, at 3 (Oct. 10, 2019 filing requesting incarceration of Defendants when Williams Miller returns to Georgia to attend trial of this matter).

[180]  ECF 87, at 1.

Defendants opposed this motion.[181]

It is clear from the language of Rule 64 itself that it is inapplicable to Williams Miller's request. The remedies for which it provides are potentially drastic methods to ensure that a judgment—if awarded—can be satisfied. As discussed above, at this stage Plaintiffs have not shown even the likelihood of entitlement to judgment in their favor. Nor is it clear how arresting any Defendant would help ensure Plaintiffs' ability to satisfy the monetary judgment they seek. The Rule is not designed to provide for the physical protection of a plaintiff.

These facts, coupled with the Court's rulings on Defendants' dispositive motions, mean that Williams Miller's various motions for protection [ECF 87, 93, 96, 110, 117, 118, 121] must be **DENIED**.

### e.    Motions Related to Warrant Requirement

On June 26, 2019, Williams Miller filed an omnibus motion that appears (among other things) to challenge the lack of a warrant in connection with the arrest of Frazer Miller:

> MOTION WHAT IS THE REQUIREMENTS [*sic*] FOR A
> WARRANT NECESSARY TO CONDUCT A TRIAL?
>
> . . . .

---

[181]  ECF 90 (Johns Creek Defs.); ECF 88 (Forsyth Cty. Defs.).

> NONE OF THIS WAS DONE BY THE FORSYTH
> CRIMINAL WHO DID NOT EVEN HAVE
> JURISDICTIONAL AUTHORITY IN FULTON
> COUNTY . . . .[182]

On July 3, 2019, Williams Miller made a similar motion: "MOTION To the Forsyth Criminals and Caroline Yi. (The Facts). —No warrant for my son."[183] The Forsyth County and Johns Creek Defendants opposed the motions.[184]

To the extent the motions relate to the arrest and criminal trial of Frazer Miller, they [ECF 65, 69] are **DENIED**. The warrantless arrest and seizure of property do not violate Section 1983 if they are supported by probable cause. *Case*, 555 F.3d at 1326–27. Plaintiffs' Amended Complaint does not contain sufficient facts to plausibly suggest that the arrest of Frazer Miller or removal of property allegedly belonging to Williams Miller lacked probable cause. *Am. Dental Ass'n*, 605 F. 3d at 1289; *Twombly*, 550 U.S. at 570. And, as discussed above in connection with Defendants' motion to dismiss, Plaintiffs have not alleged facts plausibly suggesting that any Defendant violated a clearly established statutory or federal

---

[182]  ECF 65, at 2.

[183]  ECF 69, at 2.

[184]  ECF 71 (Forsyth Cty. Defs.); ECF 72 (Johns Creek Defs.); ECF 74 (Johns Creek Defs.).

constitutional right.[185] *Case*, 555 F.3d at 1328 ("Absent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established; that is, we need not consider whether Officer Davis lacked even arguable probable cause.") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### f.   Motion to Compel

On June 17, 2019, Williams Miller filed a "motion to compel [the Johns Creek Police Department] to 'listen and not dismiss Americans of Cherokee heritage and file a police report of felony crimes committed by Forsyth criminals.'"[186] Both the Forsyth County and Johns Creek Defendants objected.[187] Given the Court's ruling granting the Johns Creek Defendants' motion to dismiss, Williams Miller's motion to compel [ECF 56] is **DENIED AS MOOT**.

### g.   Motion for Clarification

Among other things, Williams Miller's July 3, 2019 filing contained a motion for clarification concerning the history of the allegedly illegal revocation of Frazer

---

[185]   *See supra* Section III.b.i.

[186]   ECF 56 (emphasis omitted).

[187]   ECF 64 (Forsyth Cty. Defs.); ECF 67 (Johns Creek Defs.).

Miller's driving license.[188] Although styled as a motion, this portion of the filing does not appear to request any action from the Court. *See, e.g.*, Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Rather, Plaintiffs' purpose in making this "motion" is apparently only to (so to speak) "set the record straight"[189] As such, no order from the Court is necessary and the "motion" for clarification [ECF 69] is **DENIED AS MOOT**.

### h.   Motions Seeking Discovery and Jury Trial

In his July 3, 2019 filing, Williams Miller also included a "motion" to "produce all valid Fulton County warrant(s)."[190] The Court construes this as a motion to compel Defendants to produce documents. Both the Forsyth County and Johns Creek Defendants opposed the motion.[191] Williams Miller made numerous other motions requesting the production of particular discovery or the lifting of the discovery stay.[192] Defendants opposed those requests.[193] In addition, Williams

---

188  ECF 69, at 3. The Johns Creek Defendants opposed the motion on July 17, 2019. ECF 74.

189  ECF 69, at 3.

190  *Id.*

191  ECF 71 (Forsyth Cty. Defs.); ECF 74 (Johns Creek Defs.).

192  *See, e.g.*, ECF 93; ECF 96, at 11; ECF 99, at 1; ECF 117, at 3.

193  *See, e.g.*, ECF 98 (Forsyth Cty. Defs.); ECF 101 (Judge McBurney); ECF 102, 106 (Johns Creek Defs.).

Miller filed multiple requests for a jury trial,[194] which Defendants also opposed.[195]

Given the Court's rulings on Defendants' motions to dismiss, all requests for discovery and for a jury trial [ECF 69, 84, 87, 92, 93, 96, 99, 117] are **DENIED AS MOOT**. This does not preclude Plaintiffs from including a request for jury trial if they choose to replead.

Williams Miller also requested access to the Court's CM/ECF electronic filing system. Access to that system is, however, limited to attorneys authorized to practice before this Court. *See, e.g.*, LR Appendix H, NDGa (Revised Electronic Case Filing Standing Order & Administrative Procedures); N.D. Ga. Standing Order 19-01, at App. H-3, ¶ 5 ("Pro se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form."). Accordingly, Williams Miller's request for CM/ECF access is **DENIED**.

### i. Motions to Admit Evidence

On July 29, 2019, Williams Miller submitted a filing with various "motions" to "admit" certain evidence related to open records requests he made concerning

---

[194] *See, e.g.*, ECF 84, at 2; ECF 87, at 2; ECF 92; ECF 96, at 2–6, 10–12; ECF 99, at 2, 4; ECF 117, at 1.

[195] *See, e.g.*, ECF 90, 106 (John Creek Defs.); ECF 94, 97, 100 (Judge McBurney); ECF 98 (Forsyth Cty. Defs.).

whether warrants were issued in connection with the arrest of Frazer Miller.[196] Williams Miller asserted that the Court should draw the conclusion from the absence of such records that (1) Frazer Miller was assaulted and kidnapped by (certain of) Defendants and (2) the Forsyth County Defendants trespassed on Plaintiffs' real property and stole personal property belonging to Plaintiffs.[197] The Forsyth County Defendants opposed.[198]

On August 2, 2019, Williams Miller made a similar motion related to the purported lack of evidence about the state of his car's headlights on July 23, 2016.[199] The Forsyth County Defendants opposed.[200] On August 7, 2019, Williams Miller filed a motion that the Court "Declare Defendants Domestic Terrorist[s]."[201] All Defendants opposed this motion.[202]

---

[196] ECF 78.

[197] *Id.* at 3–4.

[198] ECF 80.

[199] ECF 82. If the video provided by Plaintiffs is indeed from the night of July 23, 2016 (which is not clear from the video itself or the record), it does not show any images of the car's headlights. May 24, 2019 Docket Entry (re ECF 44).

[200] ECF 88.

[201] ECF 83.

[202] ECF 90 (Johns Creek Defs.); ECF 88 (Forsyth Cty. Defs.); ECF 91 (Judge McBurney).

Given the Court's other rulings in this Order, Williams Miller's motions [ECF 78, 82, 83] are **DENIED AS MOOT**.

### j.    Motions for Settlement

On July 29, 2019, Williams Miller filed a "motion" that actually makes various settlement proposals to Defendants.[203] All Defendants opposed.[204] Williams Miller appeared to renew his settlement demand on August 7, 2019.[205] All Defendants rejected the demand.[206] The motions do not seek any relief from the Court. Fed. R. Civ. P. 7(b)(1) (request for court order must be made by motion).

Given the Court's rulings on Defendants' motions to dismiss, these settlement demand "motions" [ECF 77, 83] are **DENIED AS MOOT**.

### k.    Motions for Leave to Amend

On October 30, 2019, Williams Miller filed a motion to amend the complaint to add additional defendants; he did not seek leave to add new claims against the

---

[203]  ECF 77.

[204]  ECF 80 (Forsyth Cty. Defs.); ECF 85 (Judge McBurney); ECF 86 (Johns Creek Defs.).

[205]  *See, e.g.*, ECF 83 ("Does Judge McBurney want to negotiate a settlement or not?").

[206]  ECF 90 (Johns Creek Defs.); ECF 88 (Forsyth Cty. Defs.); ECF 91 (Judge McBurney).

existing Defendants.[207] Williams Miller sought to supplement his motion on

November 8, 2019, although the supplement largely tracks the allegations in the

original filing, with the addition of specific amounts of damages sought from each

proposed defendant.[208] Through these motions, Williams Miller seeks to add

Michael Carter,[209] Michael Garrison, Lisa Walnut, Paul Howard, Lt. Strano, and

the Forsyth County Jail as Defendants.[210] The Court's September 12, 2019 Order

had by then relieved Defendants of the obligation to file opposition briefs in

response to Williams Miller's many motions.[211]

A party may amend its complaint only by leave of court or with written

consent of the adverse party when it has been more than 21 days after service of

the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). The rule provides that

"[t]he court should freely give leave when justice so requires." *Id*. But the decision

of whether to grant leave to amend is committed to the sound discretion of the

---

[207]  ECF 119.

[208]  ECF 120.

[209]  Williams Miller also suggested in an earlier filing that he wanted to add Carter as a defendant, although he did not request lease to do so at that point. ECF 93, at 3. All Defendants objected to that filing. ECF 98 (Forsyth Cty. Defs.); ECF 101 (Judge McBurney); ECF 102 (Johns Creek Defs.).

[210]  ECF 93, 119, 120.

[211]  ECF 107.

trial court. *S. Grouts & Mortars., Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *Faser v. Sears Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979);[212] *Interstate Nat'l Dealer Servs., Inc. v. U.S. Auto Warranty, LLC*, No. 1:12-cv-04265-RWS, 2015 WL 13273318, at *8 (N.D. Ga. Dec. 11, 2015) ("[L]eave to amend is by no means automatic."). The Eleventh Circuit has advised that a court should deny leave when "there is [a] substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). *See also Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile").

Williams Miller has provided only one page of a proposed amended complaint concerning the proposed defendants.[213] The nature of the allegations

---

[212] *Bonner v. City of Prichard, Ala.*, 661, F.2d 1206, 1209–10 (11th Cir. 1981) (adopting as binding precedent in Eleventh Circuit all decisions of Fifth Circuit made prior to October 1, 1981).

[213] ECF 119-1.

Williams Miller's failure to provide the full proposed pleading in connection with his motion for leave to add defendants is also problematic. *Cf.* LR 15.1,

against them is devoid of factual support.[214] Williams Miller has supplied only "labels and conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The information Williams Miller has provided with regard to the proposed defendants does not satisfy Rule 8 and is insufficient to survive a Rule 12(b)(6) motion to dismiss. *Am. Dental Ass'n*, 605 F. 3d at 1289. The proposed amendment as stated is futile.

Moreover, Williams Miller's attempt to add new defendants is unduly delayed. Plaintiffs initiated this action nearly 16 months before formally seeking to add new defendants. It is impossible to discern from the rambling, disjointed, and conclusory allegations in Williams Miller's motions when most of the alleged misconduct by the proposed defendants supposedly occurred. It appears, however, that at least some of the events he complains about happened in July 2016—nearly four years ago.[215] The reason for his delay is unclear, given the fact

---

NDGa ("In those instances where reproduction of the entire pleading as amended would be unduly burdensome, parties filing or moving to file an amendment to a pleading shall be permitted to incorporate relevant provisions of prior pleadings by reference.").

[214] *See, e.g.*, ECF 119, at 1-2 ("[T]he Forsyth County Sheriff's Office tried to murder me. . . . [Proposed defendant] is a liar.").

[215] *See, e.g.*, ECF 57, at 1.

that Williams Miller had long been in possession of the information on which he bases his request to add the new defendants.

For instance, Williams Miller seeks to add Lisa Walnut as a defendant, despite his attempt to serve her with the Amended Complaint without actually having named her as a party.[216] At least as early as October 2018, Williams Miller was aware of his claims against Walnut, Garrison, and Lt. Strano, having included their names in an "attachment" to the Amended Complaint alleging that they committed crimes on Williams Miller's private property.[217] Lt. Strano was first mentioned as having attempted to murder Williams Miller as early as May 22, 2019,[218] yet he waited five more months to seek leave to add Strano as a party. Such delay cannot be excused. Allowing Williams Miller to add new defendants after this length of time would prejudice those parties—especially since all of the individuals are likely entitled to some form of immunity and Williams Miller has long known of their alleged misconduct.

Finally, the claims against the proposed defendants may be barred by a two-year statute of limitation, as Walnut argues in the Forsyth County Defendants'

---

[216]  ECF 35.

[217]  ECF 16.

[218]  ECF 44, at 2.

motion for judgment on the pleadings.[219] Given the Court's separate ruling above with regard to Walnut,[220] it does not analyze the correctness of her statute of limitation defense. The point is worth mentioning, however, because it further bolsters the prejudice the proposed defendants will face if the Court permits Plaintiffs to add them to the litigation at this late date.

While delay or prejudice might not be sufficient alone to justify denying leave to amend, denial is appropriate here when those factors are coupled with Williams Miller's inability to state a claim against any current Defendant; the dismissal with prejudice of claims against nearly all Defendants; the fact that the allegations against the new proposed defendants to not state a claim; and the fact that the proposed defendants will likely have strong affirmative defenses. *Reese*, 527 F.3d at 1263 (undue delay, repeated failure to cure deficiencies, undue prejudice, and futility are *each* appropriate grounds to deny leave to amend); *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 666 (6th Cir. 2005) (concluding district court did not abuse discretion in denying leave to add party where plaintiffs did not seek leave to do so; deadline for adding new parties had passed; plaintiffs failed to show good cause or how proposed defendant was

---

[219]  ECF 49-1, at 15–17.

[220]  *See supra* Section VI.b.i.

liable; and addition of proposed defendant would be highly prejudicial); *Jones v. Experian Info. Sol'ns, Inc.*, 141 F. Supp. 3d 159, 161 (D. Mass. 2015) (court applies Rule 12(b)(6) standard in determining futility; indicating 20-month delay after initial complaint and 10-month delay after first amended complaint "not prompt" and supporting denial of motion by *pro se* plaintiff for leave to amend to add defendants).

Accordingly, Williams Miller's motions to amend the pleadings to add new defendants [ECF 119, 120] are **DENIED**.

## VIII.  WALNUT AND HOBBS'S MOTION FOR SANCTIONS

### a.    Sanctions Motion

On June 12, 2019, Walnut and Defendant Hobbs served Plaintiffs with a Rule 11 motion for sanctions (the "Sanctions Motion").[221] They filed their motion with the Court more than 21 days later, on July 18, 2019.[222] Williams Miller objected to the motion on July 24, 2019.[223] The Forsyth County Defendants opposed the objection.[224]

---

[221]  ECF 55, at 2.

[222]  ECF 75.

[223]  ECF 76.

[224]  ECF 80.

Walnut and Hobbs contend that the Amended Complaint lacks a reasonable factual basis, has no reasonable chance of success, and was filed to harass them. They seek a "pre-filing injunction" and the costs of the Sanctions Motion.[225] Their brief recites numerous facts that are not contained in the pleadings or otherwise part of the record in this case.[226] Williams Miller responded to the motion largely by reasserting his growing list of grievances against Defendants and others.[227]

Under Eleventh Circuit precedent, three types of conduct can justify the imposition of Rule 11 sanctions:

> "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose."

*Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir. 1991)).

Although Plaintiffs have failed to plead a sufficient factual basis for their allegations, that does not necessarily mean no such basis exists or could exist. A failure to satisfy Rule 12(b)(6) does not automatically trigger sanctions under Rule

---

[225]   ECF 75.

[226]   ECF 75-1.

[227]   ECF 76.

11. Nor is there any evidence that Plaintiffs have acted in bad faith or for improper purposes. Rather, the nature and tone of Plaintiffs' allegations, along with the frequency of Williams Miller's filings with this Court indicate that he sincerely believes his allegations—despite Plaintiffs' inability to support them with sufficient facts. Plaintiffs are seeking to protect the constitutional rights to which they believe they are entitled. *Didie*, 988 F.2d at 1104 ("Because an objective standard of reasonableness under the circumstances governs whether Rule 11 has been violated, 'a federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing.'") (citing *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992)). While Williams Miller's belief is not sufficient to satisfy the federal pleading standard, it cautions against the award of sanctions at this point. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (district court has discretion in determining whether to impose sanctions under Rule 11; court abuses discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence"); *Rolleston*, 848 F.2d at 165 (decision to impose Rule 11 sanctions within district court's "sound exercise of discretion") (citing *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987)). This is especially true since Plaintiffs

will be permitted to replead their allegations against Walnut and Defendants the City of Johns Creek, Forsyth County, and Hobbs.[228]

Moreover, the injunctive relief Walnut and Hobbs seek is extreme—"an order to enjoin and prohibit Plaintiffs from filing any further actions against Deputy Hobbs, Deputy Walnut, or other employees or officers of the Forsyth County Sheriff's Office[229] without benefit of licensed counsel or prior leave of court."[230] They cite no law in support of this request other than the text of Rule 11 itself, which states that a district court can impose a sanction that includes "nonmonetary directives."[231] Fed. R. Civ. P. 11(c)(4). A "nonmonetary directive" is, however, a far cry from limiting Plaintiffs' First Amendment rights on the current record and motion. This action appears to be the first civil suit Plaintiffs have filed against any of these Defendants, although Plaintiffs have clearly previously tried to have Hobbs prosecuted for his alleged assault on/attempted murder of Frazer Miller. Walnut and Hobbs certainly have not pointed to conduct that is sufficiently severe that a restriction of Plaintiffs' constitutional rights is

---

[228]  *See supra* at 39, 56, 57, 58–59.

[229]  The Forsyth County Sheriff's Office is not a party to this action.

[230]  ECF 75-1, at 6.

[231]  *Id.* at 5.

necessary to deter it or case law suggesting that such a drastic sanction is appropriate under these facts. Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct . . . .").

Accordingly, the Sanctions Motion [ECF 75] is **DENIED**. However, because Plaintiffs have been given leave to replead their claims against Defendant Hobbs, the motion is **DENIED WITHOUT PREJUDICE**. Should Walnut or Hobbs believe it is appropriate to file another Rule 11 motion in response to any second amended complaint offered by Plaintiffs, they may do so.

### b.  The Sanctions Motion Did Not Threaten Plaintiffs.

On June 17, 2019, Williams Miller filed with the Court a copy of the cover letter that accompanied service of the Sanctions Motion, describing it as a "letter from defendant lawyer showing threat to Plaintiffs."[232] Also on June 17, 2019, and in response to the Sanctions Motion cover letter, Williams Miller separately requested that "all communications with plaintiff's [sic] be sent and documented" in the Court's records.[233] The Johns Creek and Forsyth County Defendants opposed that request.[234]

---

[232]  ECF 55.

[233]  ECF 59.

[234]  ECF 64 (Forsyth Cty. Defs.); ECF 67 (Johns Creek Defs.).

Walnut and Hobbs merely followed the requirements of Rule 11 in first serving a copy of the Sanctions Notion (as well as the brief and exhibits) on Plaintiffs;[235] waiting the required 21 days; and then filing the motion with the Court. Fed. R. Civ. P. 11(c)(2). There was nothing threatening or improper about the cover letter or the Sanctions Motion itself. There is no need, nor is it appropriate, for communications among the parties to be "sent and documented" in the Court's records. LR 7.4, NDGa ("Counsel shall not provide the Court with copies of correspondence among themselves relating to matters in dispute"). Accordingly, Williams Miller's motion [ECF 59] is **DENIED**.

## IX.    CONCLUSION

To summarize the Court's lengthy discussion:

The Johns Creek Defendants' motion to dismiss [ECF 37] is **GRANTED**. All claims against Defendants Brian Weaver, John Clifton, and Christopher Byers are **DISMISSED** *WITH PREJUDICE*. The claims against the City of Johns Creek, Georgia are **DISMISSED WITHOUT PREJUDICE**.

---

[235]  ECF 75-3 (proof of service of Sanctions Motion).

Defendant Judge Robert C.I. McBurney's motion to dismiss [ECF 45] is **GRANTED**. All claims against him are **DISMISSED *WITH PREJUDICE***. Judge McBurney's motion for protective order [ECF 104] is **DENIED AS MOOT**.

The Forsyth County Defendants' motion for judgment on the pleadings [ECF 49] is **GRANTED**. Lisa Walnut was never properly served or added as a party to this litigation. As a result, the Court lacks personal jurisdiction over her and any claims against her are **DISMISSED WITHOUT PREJUDICE**. Defendant Forsyth County, Georgia was never properly served and all claims against it are therefore **DISMISSED WITHOUT PREJUDICE**. If appropriate, Forsyth County and Walnut may reassert any defensive arguments not disposed of by the Court in response to any amended pleading. All claims against Defendant Michael Hobbs are **DISMISSED WITHOUT PREJUDICE**. All claims against Defendant Caroline Yi are **DISMISSED *WITH PREJUDICE***.

The motion for sanctions by Walnut and Defendant Michael Hobbs [ECF 75] is **DENIED WITHOUT PREJUDICE**.

Plaintiffs will have 21 days after entry of this Order to file a second amended complaint consistent with this Order, if they wish. The second amended complaint may **NOT** replead claims that have been dismissed in this order "with prejudice." If Plaintiffs wish to include claims in the second amended complaint against Lisa

Walnut or Forsyth County, Georgia, each named party must be properly served. Plaintiffs are cautioned that failure to comply with the Court's instructions in this and previous Orders may result in the summary dismissal with prejudice of this action. The Clerk of Court is **DIRECTED** to resubmit this Order to the undersigned in 21 days if Plaintiffs do not file a second amended complaint by that time.

Plaintiffs' motions at ECF 44, 47, 53, 54, 56, 57, 59, 62, 63, 65, 66, 69, 73, 76, 77, 78, 82, 83, 84, 87, 92, 93, 96, 99, 105, 110, 117, 118, 119, 120, 121 are **DENIED IN THEIR ENTIRETY** for the reasons stated above. Any other motions filed by Plaintiffs not specifically addressed by this Order are **DENIED AS MOOT**.

Discovery in this action remains **STAYED** until further order of the Court.

**SO ORDERED** this the 2nd day of April 2020.

Steven D. Grimberg
United States District Court Judge